Alright, Mr. Kellner, good afternoon, you have three minutes reserved for rebuttal. Good afternoon, your honors. May it please the court, this court's decision in American Girl v. Zemca last fall requires reversal in this case. Why don't we start with our decision in Dow because that, I think, is more closely analogous to the situation we have here. Well, that's very important, your honor, because Let me read you a line from Dow and you can tell me how this case differs. Dow said a court lacks personal jurisdiction where a plaintiff does not include a single allegation that a defendant bank used an actual, specific transaction through a New York correspondent account in the course of bringing about the injuries on which the claims are predicated. That's what we said in Dow and here you have your injury here is that the failure to use the correspondent account, right, to transfer the money, correct or incorrect? Correct, your honor. There's no actual specific transaction that occurred through that correspondent account because it never happened, right? Except that there was an agreement to do that transaction and that's what's different from Dow. In this particular case, Bank Audi filled out the transfer forms with Mrs. Rad in order to get her not to When did that happen? Pardon? Where did that happen? That happened in Beirut because she Okay, so we don't have that, an action that took place in Beirut would be very odd if that gave us personal jurisdiction. But the agreement was that they would transfer the funds into New York knowing that she was a New York resident and knowing That's exactly the situation in Dow. In Dow the claim was that they promised to transfer the money. We said they used, the allegation was that the bank, the same bank, used its New York correspondence account to handle the plaintiff's and other investors' money in the past. And likely would have done so if, counterfactually, they had transferred the plaintiff's money to the United States as promised. As promised. So in Dow there was also this promise, alleged promise, to transfer the money. That's exactly what you're alleging here. But Your Honor, in Dow you did not have the relationships to New York that you have in this case. What would that, what relationship? That they're New York residents, that they're What does that have to do with the transaction that's at issue? It doesn't matter where they, they could be anywhere. It's whether the transaction at issue occurred in New York. That's what you have to show on the prom too, right? But that's the difference with American Girl, Your Honor. In American Girl, you had a single product order with a confirmation email. You're talking about a company that was selling products everywhere, including New York. You have someone sitting in New York who orders the product in New York, who gets a confirmation email in New York for a product to be shipped to New York. But, but, Your Honor. Judge Nardini pointed out your clients are in Lebanon, having a transaction in Lebanon, completely divorced from New York. Well, it's not completely divorced because they went to Lebanon in order to go face-to-face with the bank in order to get the funds transferred to New York. And the bank promises we will transfer the funds to New York if you agree to hold off on doing your immediate withdrawal. In your area of personal jurisdiction, a bank that has no presence in any state in the United States, if someone who happens to reside there reaches out to the bank and asks them to do something and they claim the bank promised to do it, all of a sudden that bank would be hauled into that state because that person happens to be- But Judge, that ignores the reality of what the banking situation is where Bank Audi conducts its international business through its New York correspondent banks. So what Bank Audi is doing is using its New York accounts in order to conduct its business- Yeah, but it didn't use it in this case. Pardon? It didn't use it in this case. Well, they- I mean, if they were headquartered in New York, you'd have a completely different story. You'd say they use it so much they're home here, whatever. But they didn't use it here. But there were many prior transactions with- Right, but this dispute doesn't arise from those. If you had a link and said that, yeah, one of those transactions went wrong, then it would be easy, right? But this has nothing to do with the fact that in the past they've done those transactions. Well, except that they agreed to do it in this case. They agreed that they would- I said it has nothing to do with the previous transactions. And you said except that they agreed to do it in this case. But that is not an exception from what happened in the past. That's just something that's completely- It's like Monty Python, and now for something totally different. Well, Your Honor, I respectfully disagree. I mean, the core of the issue here is that the bank promised to transfer the funds to New York with a New York resident. Isn't it a fact that New York courts have ruled that that's not sufficient to give rise to what you're asking? Not in that situation, Your Honor. As I say, this is different from the Dow case where you had a specific agreement to do a particular transaction in New York where the nature of the transaction was, in a sense, a promissory estoppel. Don't take the money now. We promise we'll get it to you in New York in the future. The bank itself filled out the forms agreeing to make these future transfers. In Lebanon, they filled it out. That's true, Your Honor. I'm just saying, I'm not the only one, but I sat on Dow. And I have to say, as I read the briefs, I kept getting confused. I thought I was reading the Dow case again, and somehow it would come back to me. And then I realized, oh, no, these are different people, but literally the same factual scenario. I just kept thinking maybe I was reading old briefs. Well, again, Your Honor, I think if you actually go back and look at the record in this case, the facts are different. In Dow, you did not have American citizens with a longstanding relationship. Remember, the relationship began with Bank Audi's predecessor, New York Branch. Actually, in Dow, they were United States citizens. Pardon? In Dow, they were United States citizens. So, again, you just keep mapping things right onto Dow. All these facts map onto Dow. So that's not a distinction, for example. Well, if that's the court's view, then I guess I have – well, I'll go on to my – They were United States citizens who lived in Florida. Pardon? They were United States and Lebanese citizens, and they resided in Florida. They were Jewish citizens who lived in America. Yeah, but that connection to New York isn't the same as what we have here. And it's the New York correspondent-bank relationship which allows Bank Audi to continue in its international business, and that's the basis that we're seeking reversal. All right. Thank you, Mr. Kelman. Okay, we'll hear from Ms. Jacobs. Good afternoon. Your Honor, Samantha Heifetz for the Bank, a definite appellee. I think this court has a very good handle on this appeal, so I won't take much of your time. I'm happy to answer any questions that you have. As the panel's questions have hit upon already, this is very much on all fours with Dow. In Dow, the Dows came to court complaining that the bank had reneged on a promise to transfer their funds from Lebanon to New York. That is the same complaint that the plaintiffs here come with. They alleged that there were certain documents executed. I guess in Dow it was an oral representation? Not that that would matter, but – Yeah, not that it would matter. In Dow, they didn't specify, but I believe they made reference in the declarations to communications that they had with the bank. They also relied on the general agreement underlying the relationship, which the plaintiffs here attempted to rely on. The district court properly recognized that the written underlying agreement, which is in English and is in the record, says absolutely nothing about a right to international transfers. The other distinction is that they have bank accounts here in New York. In Dow, there weren't bank accounts in New York, right? In Dow, they also were looking to have their funds transferred to their U.S. accounts, and they were alleging that the money would come through New York because of the bank's correspondent accounts in New York. But to your point, I mean, in plaintiffs' view of the world, any account holder, U.S. citizen or otherwise, any account holder could go to the bank in Lebanon and request an international transfer of funds. In their view of the world, that request is a right to that transfer. That's not true, as we argue, as a matter of Lebanese law. But in any event, in their view of the world, they have a right to a transfer to whatever destination they put before the bank. But that's not fair to their argument. They're not saying it's because they requested it. They're saying it's because the bank promised it. I'm just noting that they also suggest that they have a right to it. And then they're suggesting that that alone would mean that wherever they submitted that transfer order, asking for a transfer. Because remember, the promise here, it's not based on the general agreement. As the district court recognized, there's nothing in the general agreement that speaks to a right to an international transfer. When opposing counsel talks about a transfer order having been completed in Lebanon, he's trying to identify some other basis where the bank made a promise to make a transfer. Those transfer orders are also in the record. You can take a look at them. The completion that he's talking about is allegedly the bank helped the RADs to fill out their portion of the form, putting in their information to make the request. The rest of the form, where the bank would authorize it, is not completed. Aren't they alleging? I don't think this affects the result, but I just think you're not stating their argument completely. They are arguing that the bank promised to send the money to New York, and you're making it sound as if their only argument is that they've asked for it, and they've filled out forms that constitute a request, and that- Your Honor- It's not dealing with their- Yeah, no, no, I want to take it in pieces. So I think what I'm trying to do is walk through it in three parts. The first is the very clear agreement that everyone agrees is a written underlying the general agreement, which the district court spoke about. The second piece that I'm taking is what opposing counsel spoke about this morning, the transfer orders. And I'm addressing the fact that the assertion that these were completed by the bank is not a fair assertion. You can see on its face, as the district court recognized, that the completion by the bank that he's referring to is not an authorization by the bank. It's filling out the form with the RAD's information, and that the portions that would be completed by the bank to authorize anything are blank. So those are just relevant facts to clarify. The third piece that Your Honor is referring to is that there is an allegation here that orally a promise was made by a bank manager that the transfer would be completed. And so although that wasn't discussed this morning, that would be the piece Your Honor is referring to, that there was some kind of an oral promise. That, again, there's in the record through the declarations explanation of why that couldn't, as a matter of Lebanese law, suffice, but it's neither here nor there. The point is that, in their view of the world, any person who's showing up, making a request, and having it be accepted by a bank for a transfer anywhere, satisfies personal jurisdiction, whether they want to move their money to Kansas or elsewhere. There's no case that they've been able to put in front of this court, and for good reason they cannot, that would suggest that New York's long-arm statute or due process confers jurisdiction when you open a bank account in Lebanon, maintain a bank account in Lebanon, have dealings, and are received services under a Lebanese contract for banking services in Lebanon. And at some point you request a routine transfer of your funds elsewhere, and a bank's consent to provide, assuming the consent had occurred for the sake of argument because we're at a motion to dismiss stage, even assuming a bank consents to provide a routine transfer to whatever destination, the notion that that confers personal jurisdiction is inconsistent with all of the cases that this court has decided and that the New York state courts have decided. We cite a number of them in the brief. It's very clear that that kind of contact, as plaintiffs acknowledge, the quality of contact matters for personal jurisdiction, and there's no basis for suggesting that consent for that kind of routine transfer, even assuming it occurred, would be sufficient to confer jurisdiction. If there are no further questions, I'm happy to address American Girl. I think the court has a very good understanding of why that case, which really is about whether or not maintaining a website that allows American shoppers to make purchases, accepting payment over the Internet, stands in total contrast with the case that we have here. And again, we happily have now reached what is the last of the pending cases this court has in the last year decided, the Crete case, Moussaoui, various cases that follow from Dow, and found that district courts have correctly determined that there's no basis for personal jurisdiction. This is now the last of this line of cases that have been properly decided and should be affirmed, because obviously the alternative here is opening the door in New York courts to many, many litigants who wish to bring precisely the same claims. If Your Honor thinks that this is a repeat, I can promise that this would open the door to many more of the same. With that, thank you. So none of those other cases, the Dow case or all the other progeny of them, have the same factual basis as this case, where the bank specifically agreed to transfer the funds through its New York correspondent bank account to pay the funds in New York. And that's the key difference in this case. So I ask the court to focus on that factual difference. In Dow, it says that the allegation was that they had not transferred the money as promised. In Dow, there was the same alleged promise that we have here. I don't know why. Well, in this case, you have the actual act of the bank filling out the forms and saying, we are going to transfer the funds to New York. And if you apply the theory of American Girl, you have the bank using New York in order to transact its international banking business, and that's a basis for jurisdiction. And that's the critical difference here from those other Lebanese cases. And recall the Lychee case, which, again, is if there is a correspondent bank transaction through New York that is related to the allegations, then that is a basis for jurisdiction. And so to be consistent with Lychee, in this case, the court should apply the principles that it set forth in American Girl, that where you are using New York in order to conduct business and you make an agreement to do a transaction in New York, then jurisdiction applies. Thank you. I'll take a vote for reserve decision. Have a good day.